IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Patsy Gail Nicholson, ) | C/A No. 0:10-581-HFF-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Patsy Gail Nicholson ("Nicholson"), brought this action pursuant to 42 U.S.C. § 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

In September 2004, Nicholson applied for SSI. Nicholson's application was denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on March 20, 2008 at which Nicholson appeared and testified and was represented by Donald L. Pilzer, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated September 26, 2008 finding that Nicholson was not disabled. (Tr. 13-29.)

Nicholson was born in 1961 and was 44 years old at the time of her alleged onset date. (Tr. 80.) She has a tenth-grade education and a General Equivalency Diploma and has past relevant work experience as a money collector and carpenter helper. (Tr. 86, 92.) Nicholson alleges disability

since September 1, 2005[1] due to pain in the left side of her body, chest pain, headaches, and arthritis. (Tr. 85, 488.)

The ALJ made the following findings and conclusions:

1. The claimant has not engaged in substantial gainful activity since September 1, 2005, her amended alleged onset date (20 CFR 416.920(b) and 416.971 *et seq.*).

2. The claimant has the following medically determinable combination of severe impairments: headaches; pain on left side of body; depressions; and anxiety (20 CFR 416.920(c)).

    \*   \*   \*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P. Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

    \*   \*   \*

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform the exertional demands of medium work.

    \*   \*   \*

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

    \*   \*   \*

6. The claimant was born on [REDACTED], 1961 and was 44 years old, which is defined as a younger individual age 18-49, on September 1, 2005, the amended alleged onset date (20 CFR 416.963).

7. The claimant has at least a high school (general equivalency diploma) education and is able to communicate in English (20 CFR 416.964).

    \*   \*   \*

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    \*   \*   \*

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.960(c) and 416.966).

    \*   \*   \*

---

[1] Nicholson initially alleged disability beginning July 20, 2003, but amended her alleged onset date at her hearing before the administrative law judge.

    10.    Thus, I find that the claimant has not been under a disability, as defined in the Social Security Act, since September 1, 2005, her amended alleged onset date (20 CFR 416.920(g)).

(Tr. 15-29.)

Nicholson filed a request for Appeals Council review which was denied on February 19, 2010, making the decision of the ALJ the final action of the Commissioner. (Tr. 3-6.) This action followed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 416.920(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie*

case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Nicholson raises the following specific issues for this judicial review:

A. Is the conclusion that Ms. Nicholson can perform gainful activity supported by substantial evidence when it is contradicted by opinion evidence from the treating psychiatrist?

B. Did the ALJ apply an incorrect legal standard by failing to permit a thorough cross-examination of the vocation expert by counsel?

(Pl.'s Br., ECF No. 12.)

**DISCUSSION**

**A.     Dr. Jon C. Kazaglis's Opinion**

Nicholson argues that, when determining her residual functional capacity ("RFC"), the ALJ erred in rejecting the opinion provided by Dr. Jon C. Kazaglis, Nicholson's treating psychiatrist. Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. § 416.927(d)(2). However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).

The ALJ found that Nicholson had moderate limitations in social functioning and in concentration, persistence, or pace that impacted her ability to work. (Tr. 16, 18.) Incorporating

these limitations in determining Nicholson's RFC, the ALJ found that Nicholson's mental impairments limited her to "simple 1-2 step tasks in a low stress work environment, with occasional public contact" and no production work. (Tr. 18.) The ALJ noted that Nicholson testified at the hearing that she experiences a lot of anxiety and panic attacks, does not drive often due to road rage, and gets bothered and tired by being around people. (Tr. 17.) However, the ALJ found Nicholson's testimony to be less than fully credible in that it was "inconsistent with her prior statements documented in the medical record, the medical evidence in the record, and with her allegations of limitations." (Tr. 20.)

With regard to Dr. Kazaglis, the ALJ discussed that the record contained progress notes from 2006 and 2007 that contained a diagnostic coding for major depressive disorder in a different handwriting. The ALJ otherwise described the progress notes as "completely illegible" and stated that they "provide no help to the court is assessing the severity of [Nicholson's] mental limitations." (Tr. 27.) The ALJ also discussed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) and a Physical Residual Functional Capacity Questionnaire completed by Dr. Kazaglis on April 27, 2006 in which Dr. Kazaglis stated that he had treated Nicholson since May 11, 2005 and diagnosed her with major depression. (Tr. 27, 231-37.) Dr. Kazaglis opined that Nicholson's depression with psychosis affected her physical condition to the point where it would interfere with the attention and concentration needed to perform even simple work tasks. Additionally, Dr. Kazaglis evaluated Nicholson as having (1) extreme limitations in carrying out detailed instructions; (2) marked limitations in understanding and remembering detailed instructions; in the ability to make judgements on simple work-related decisions in interacting appropriately with the public, supervisors, and co-workers; and in responding appropriately to work pressures in a usual work setting and to changes in a routine work setting; and (3) moderate limitations in understanding

and remembering short, simple instructions; and in carrying out short simple instructions. (Tr. 27, 230-31.) Dr. Kazaglis opined that Nicholson's mood instability would make her unable to maintain effective work skills and concluded that she was incapable of even low stress jobs. (Tr. 27, 232, 235.) Dr. Kazaglis stated that his conclusions were supported by Nicholson's clinical history and a recent psychiatric evaluation on April 26, 2006.

The ALJ assigned no weight to Dr. Kazaglis's opinion, stating that the opinion was inconsistent with the longitudinal medical record and again noting that the treatment notes Dr. Kazaglis uses to support his opinion are completely illegible. (Tr. 27.) Specifically, the ALJ noted that while Nicholson saw numerous medical providers during the relevant time period, she did not report mental limitations to any of these treating sources, but instead was noted by these providers as having normal mood and affect and appropriate behavior. (Tr. 16.) The ALJ also noted that there was no evidence in the record of any episode of decompensation and that Nicholson had never been hospitalized as an adult, even though she testified to experiencing depression and anxiety, including suicidal ideation. (Tr. 18.)

Nicholson first argues that the ALJ offers no specifics when stating that Dr. Kazaglis's opinion is inconsistent with the longitudinal medical record. The court finds this argument to be without merit. The court observes that the ALJ discusses Dr. Kazaglis's opinion in two sections of the ALJ's order. It is first discussed at Step Three of the sequential evaluation and again in determining Nicholson's RFC. Under the latter discussion, the ALJ states "as discussed *supra*, the longitudinal medical record does not support [Dr. Kazaglis's] opinion." (Tr. 27.) It appears to be this statement that Nicholson relies on in support of her argument. However, upon review of the ALJ's discussion of Dr. Kazaglis's opinion at Step Three, it is clear that the order does indeed discuss several examples of inconsistencies. The ALJ discusses an examination by Dr. Randall P.

Provost, an examining doctor, on October 2, 2003, which made no mention of any mental impairment. (Tr. 16, 408.) The ALJ then discusses an examination by Dr. Marcia A. Oliver, a consultative examiner, who on August 30, 2005 noted that while Nicholson's affect was flat, she exhibited no unusual thoughts/thought disorder, with no gross evidence of mood disorder. (Tr. 16, 316-18.) Additionally, the ALJ found that "except during disability examinations, medical examinations consistently showed [Nicholson] was alert and exhibited no mental limitations." (Tr. 16.) In support of this statement the ALJ referenced a January 3, 2006 examination by Deborah Ellis FNP-C who stated that Nicholson was behaviorally appropriate, and three visits to the emergency room on February 11, 2005, June 10, 2005, and May 9, 2006 where Nicholson was found to be alert, oriented times three, and with normal mood and affect. (Tr. 16, 239-40, 256, 266, 272.) Further, based on the foregoing, the court finds that Nicholson's argument that the only evidence contradicting Dr. Kazaglis's opinion is from a non-examining physician is incorrect and also without merit.

To the extent that Nicholson argues that the ALJ should have requested Dr. Kazaglis to provide clarification in how he arrived at his conclusions, the court observes that Nicholson was represented by counsel at her hearing before the ALJ, at which time counsel acknowledged that Dr. Kazaglis's treatment notes were illegible but made no request that the ALJ recontact Dr. Kazaglis. (Tr. 488.) Moreover, no new submissions explaining Dr. Kazaglis's opinion or his notes were presented to the Appeals Council. Further, the ALJ "is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record," and Nicholson has failed to demonstrate that this record is incomplete or that clarification from Dr. Kazaglis would have rendered this opinion unsupported by substantial evidence. Clark v Shalala, 28 F.3d 828, 830-31

(8th Cir. 1994) (cited in Bell v. Charter, No. 95-1089, 1995 WL 347142, at *4 (4th Cir. 1995) (Table)).

Finally, the court observes that even though the ALJ assigned no weight to Dr. Kazaglis's opinion, many of Nicholson's limitations as identified by Dr. Kazaglis were nevertheless incorporated in the ALJ's RFC finding. Specifically, the ALJ found that Nicholson should be limited to simple one-to-two step tasks and to a low stress work environment that involved no production work, arguably accounting for Dr. Kazaglis's opinion that Nicholson had extreme limitations in her ability to carry out detailed instructions, marked limitations in her ability to understand and remember detailed instructions, and marked limitations in her ability to deal with the public and respond appropriately to work pressures and changes in a routine work setting. (Tr. 18, 231.)

Based on the foregoing, Nicholson has failed to demonstrate that the ALJ's evaluation of Dr. Kazaglis's opinion was unsupported by substantial evidence or reached through the application of an incorrect legal standard.

**B.     Cross-examination of the Vocational Expert**

Nicholson argues that the ALJ erred in not permitting counsel to fully cross-examine the vocational expert in violation of HALLEX[2] I-2-6-60(B), see 1993 WL 751900, and the social security regulations. After the ALJ propounded two hypothetical questions to the vocational expert, the ALJ permitted counsel to examine him. In counsel's second hypothetical question, he asked the vocational expert to

---

[2] "HALLEX" stands for the Social Security Administration's Hearings, Appeals and Litigation Law Manual. See http://www.socialsecurity.gov/OP_Home/hallex/hallex.html (last visited March 28, 2011).

> [a]ssume that [Nicholson] has the limitations set forth by the treating psychiatrist [Dr. Kazaglis] you'll find in the record at pages 239 and 240. Is there any work a person with those limitations could perform? Maybe I should be more specific. Marked, marked limitations in virtually all of the social domains: public, supervisors, coworkers, work pressures, adaptation to changes in work settings. Let's scale down the simple instructions to slight limitations in carrying out and understanding short and simple instructions. With those limitations, is there any work that a person . . .

(Tr. 516.) The ALJ responded that he would not allow that hypothetical question because it did not contain functional limitations; rather, the limitations propounded by counsel were used to establish Steps Two and Three of the sequential evaluation. In support of this statement, the ALJ referenced SSR 00-4p, SSR 96-8p, and 20 C.F.R. § 404.1560. (Id.) The ALJ also stated that defined terms for a claimant's residual functional capacity include "frequent," "occasional," "constant," and "never" and that counsel's hypothetical question needed to include defined terms such as those. (Tr. 517.) After some discussion, the ALJ did not allow counsel to ask his question to the vocational expert.

> HALLEX I-2-6-60(B) provides in pertinent part:
>
> The claimant and the representative have the right to question witnesses. A claimant or representative is entitled to conduct such questioning as may be needed to inquire fully into the matters at issue. The ALJ should provide the claimant or representative broad latitude in questioning witnesses. However, this latitude does not require the ALJ to permit testimony that is repetitive and cumulative or questioning that is designed to intimidate, harass or embarrass the witness.
>
> The ALJ determines when they may exercise this right. The ALJ usually allows the claimant and the representative the opportunity to question a witness when the ALJ completes his or her initial questioning of the witness. . . .

1993 WL 751900. The parties agree that rules included in the HALLEX lack the force of law. However, Nicholson contends that the ALJ erred in failing to follow the agency's internal procedures and challenges the authority offered by the ALJ in denying counsel's question. Nicholson further argues that the ALJ violated 20 C.F.R. § 404.950(e), which states that the ALJ "shall allow the parties or their designated representatives" to ask any questions material to the issues.

Upon review of the parties' briefs and the record in this matter, the court finds that even if the ALJ erred in not allowing counsel to propound a hypothetical question with Dr. Kazaglis's limitations, such an error was harmless, as the ALJ rejected Dr. Kazaglis's opinion, a conclusion supported by substantial evidence as discussed above. See Ngarurih v. Ashcroft, 371 F.3d 182, 190 n.8 (4th Cir. 2004) ("While the general rule is that an administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained, reversal is not required when the alleged error clearly had no bearing on the procedure used or the substance of the decision reached.") (citations & internal quotation marks omitted); see also Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004) (noting that the principle of harmless error applies to Social Security disability cases); Boone v. Halter, 23 Fed. Appx. 182 (4th Cir. 2002) (*per curiam*) (unpublished) (affirming the ALJ's decision, in part because "[t]o the extent that the Commissioner failed to follow procedures set forth in his *Hearings, Appeals and Litigation Law Manual*, we find that Boone failed to show prejudice resulting from rigorous adherence to those procedures").

## RECOMMENDATION

For the foregoing reasons, the court finds that Nicholson has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

March 28, 2011
Columbia, South Carolina.

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).